# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KELLY A. CLAMPITT : | |
| : | |
| Plaintiff, : | CASE NO. |
| : | |
| v. : | TRIAL BY JURY DEMANDED |
| : | |
| NEMOURS A.I. DUPONT : | |
| HOSPITAL FOR CHILDREN : | |
| : | |
| Defendants. : | |

## COMPLAINT

## THE PARTIES

1. Plaintiff, Kelly A. Clampitt ("Plaintiff") was at all times relevant to this complaint a resident of Smyrna, Delaware.

2. Defendant, Nemours A.I. DuPont Hospital for Children ("Defendant") is a public corporation organized and existing under the laws of the State of Delaware.

## JURISDICTION

3. The jurisdiction of this court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., the Americans with Disabilities Act ("ADA"), and the Family Medical Leave Act ("FMLA"). As such, the Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337.

1

## VENUE

4. The unlawful employment practices alleged herein were committed within the State of Delaware.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to the filing of this action, the plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about February 17, 2021.

6. On or about February 22, 2022, the EEOC issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff on or about February 22, 2022. *EEOC Right to Sue Notice* attached as Exhibit 1.

## FACTS

7. Plaintiff is a 55-year-old female.

8. Plaintiff began working for Defendant in October 2008 as a Pediatric RN and worked for the Defendant until her discharge on June 1, 2020.

9. On November 28, 2019, the Plaintiff injured her back while on the job.

10. Plaintiff applied for FMLA leave on December 5, 2019 and was approved.

11. Plaintiff remained on FMLA leave through January 21, 2020.

12. Throughout her leave, Plaintiff was in contact with HR regarding possible restrictions upon her return, such as her ability to push/pull patients on a stretcher and her return-to-work date.

14. Ultimately, Plaintiff returned and physical restrictions were put in place at work by her doctor.

15. On her second day back on duty, January 22, 2020, Plaintiff re-injured herself and was again out on medical leave.

16. Plaintiff immediately notified HR and inquired about her FMLA options.

17. Plaintiff went right from work to the ER at Christiana Hospital to be treated for her injury.

18. On January 30, 2020, Plaintiff and HR decided that a Worker's Compensation claim should be filed.

19. On February 10, 2020, Plaintiff was informed that she would be paid for Administrative Leave and was told how the process would work.

20. On March 17, 2020, it came to Plaintiff's attention that her medical providers were receiving denial letters for payment from her worker's compensation claim.

21. On March 19, 2020, Plaintiff completed paperwork to resume her FMLA, which she was approved for.

22. Between March 19, 2020 and May 5, 2020, Plaintiff was in communication with the HR department regarding her FMLA and ADA requests for reasonable accommodations.

22. On March 30, 2020, the ReedGroup processed Plaintiff's requests for FMLA leave and ADA accommodation for extended leave.[1]

22. By information and belief, Defendant outsources its entire management of leave (including FMLA Leave) and requests for ADA accommodations to the ReedGroup.

23. The ReedGroup manages the entire leave and disability process for companies with 5,000+ employees. The ReedGroup touts itself as experts in FMLA, STD, LTD, and all types of paid leave, including ADA.[2]

22. On May 5, 2020, Plaintiff contacted Nemours HR and let them know that she was scheduled for surgery on May 18th.

23. On May 13, 2020, ReedGroup sent a letter to Plaintiff requesting addition information to help assist in their determination for her ADA reasonable accommodation request. Plaintiff promptly completed the requested documentation on that same date.[3]

---

[1] 5/15/20 Letter from the ReedGroup to Kelly Clampitt approving her requests for FMLA Leave and ADA Leave along with Short Term Disability benefits attached as Exhibit (2).
[2] htttps://www.reedgroup.com/
[3] 5/13/20 Letter from ReedGroup to Kelly Clampitt requesting documentation for her pending ADA reasonable accommodation requested attached As Exhibit (3).

23. On that same date, May 13, 2020, Plaintiff had a phone discussion with Terri Hoopes in HR that she would be terminated on June 1, 2020.

24. Due to the timing of the call and Plaintiff's receipt of the letter, it is obvious Hoopes did not converse with ReedGroup regarding the legalities of her decision to terminate the Plaintiff.

25. At the time of Hoopes' phone call, Hoopes was aware that Plaintiff was both on FMLA leave through June 9, 2020 and had an approved ADA reasonable accommodation request approved and another request pending.

26. On May 20, 2020, Plaintiff received correspondence from the ReedGroup stating Plaintiff's ADA accommodation of leave was approved until May 30, 2020 and FMLA leave was approved through May 30. 2020.[4] The letter contradicted the May 15, 2020 letter stating her FMLA leave was approved until June 9, 2020.

27. At the time of Plaintiff's termination, she was on approved FMLA leave and approved ADA accommodation. In addition, she had an ADA accommodation request pending with the ReedGroup.

28. On June 1, 2020, Plaintiff's termination was effective.

---

[4] 5/20/20 Letter from ReedGroup to Plaintiff attached as Ex. (4).

29. Prior to her termination, Defendant did not engage with Plaintiff or her medical provider regarding returning to work with reasonable accommodations or light duty accommodations afforded to other employees.

## COUNT I: FMLA CLAIM—
## INTERFERENCE WITH RIGHT TO TAKE LEAVE

30. Plaintiff had a serious medication condition in the form of a physical disability related to lumbar spine injury.

31. This condition was a "serious health condition," defined in the statute as an illness, injury, impairment or physical or mental condition that involved both 1) inpatient care in a hospital or other care facility, or 2) continuing treatment by a health care provider.

32. Plaintiff gave appropriate notice of her need to be absent from work.

33. Here, Plaintiff notified the Defendant as soon as she learned of her need for leave.

34. Plaintiff's notice through her and her medical provider reasonably apprised Defendant of Plaintiff's request to take time off for her serious health condition.

35. Defendant interfered with the exercise of plaintiff's right to unpaid leave by terminating her employment and refusing to allow a Plaintiff to return to her job, or to an equivalent position, upon return from leave.

36. Defendant's acts were willful as Defendant a knew and/or showed reckless disregarding in whether its conduct violated the FMLA.

## COUNT II: FMLA CLAIM— MIXED MOTIVE/ DISCRIMINATION

37. Plaintiff had a serious medication condition in the form of a physical disability related to lumbar spine injury.

38. This condition was a "serious health condition," defined in the statute as an illness, injury, impairment or physical or mental condition that involved both 1) inpatient care in a hospital or other care facility, or 2) continuing treatment by a health care provider.
Plaintiff gave appropriate notice of her need to be absent from work.

39. Here, Plaintiff notified the Defendant as soon as she learned of her need for leave.

40. Plaintiff's notice through her and her medical provider reasonably apprised Defendant of Plaintiff's request to take time off for her serious health condition.

41. Plaintiff's taking leave was a motivating factor in Defendant's decision not to reinstate, to terminate Plaintiff.

42. Defendant's acts were willful as Defendant a knew and/or showed reckless disregarding in whether its conduct violated the FMLA.

## COUNT III-DISABILITY DISCRIMINATION-
## AMERICANS WITH DISABILITIES ACT-
## FAILURE TO ACCOMDATE AND TERMINATION OF EMPLOYMENT

43. Paragraphs 1 through 42 are hereby realleged and incorporated herein by reference as if fully set forth herein.

44. Plaintiff has a "disability" within the meaning of the ADA.

45. Plaintiff is a "qualified individual" able to perform the essential functions of her position.

46. At the time of her termination, Defendant's approved Plaintiff's request for reasonable accommodation of extended leave directly related to her disability.

47. Plaintiff's disability was a determinative factor in defendant's decision to terminate Plaintiff.

48. Such acts as described above by Defendant, its agents and employees, constitute unlawful disability discrimination against Plaintiff in violation of 19 Del. Code §711 et. Seq

49. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of disability discrimination, by and through its agents and employees, Plaintiff has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and potential lost wages and lost

benefits.

## COUNT III – RETALIATION
## AGE DISCRIMINATION AND AMERICANS WITH DISABILITIES ACT

50.     Paragraphs 1 through 49 are hereby realleged and incorporated herein by reference as if fully set forth herein.

51.     Such acts as described above by Defendant, its agents and employees, constitute unlawful continuing retaliation against Plaintiff for having complained of discrimination, requesting a reasonable accommodation for her disability.

52.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has been injured and has suffered and will continue to suffer economic loss, loss of wages and increased benefits, pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, and physical manifestation of anxiety.

**WHEREFORE**, Plaintiff requests this Honorable Court enter a judgment in his favor and against the Defendants as follows:

a.     Declare the conduct engaged in by the defendant to be in violation of the plaintiff's statutory rights.

b.     Award the plaintiff sufficient funds to compensate him for his losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

  c. Award the plaintiff compensatory such as front pay and punitive damages not otherwise specified.

  d. Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

  e. Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and;

  f. Such other and further relief as this Court deems just and proper.

**THE POLIQUIN FIRM, LLC**

/s/ Ronald G. Poliquin
Ronald G. Poliquin, Esq.
DE Bar I.D. No. 4447
1475 S. Governors Ave.
Dover, DE 19904
(302) 702-5500
*Attorney for Plaintiff Kelly Clampitt*

Dated: May 23, 2022